Totten, J.
delivered the opinion of the court.
The case is this : John P. Bell died intestate in .1846, possessed of a negro slave, named Virgil, the property in question. James Finley administered upon his estate, the 2d Nov., 1846; before the appointment and after intestate’s death, the defendant, as a constable of Dickson county, had taken said slave in execution; he sold him on the 4th Nov., 1846. The executions were not against the intestate, and one of them was in favor of said James Finley, who was present at the sale and made no objection to it, but assented to it. The said Finley died about eight months after this; and at the November term, 1847, of the county court of Dickson, Blount W. Bell, the plaintiff, was appointed administrator de bonis non, of said intestate, and thereon, he brought this action, in trover against Albert Speight, to recover the value of said slave.
The court instructed the jury, in substance, that if Finley, *452 the first administrator, had caused the defendant to levy and sell the slave, that he, Finley, as administrator would be es-topped thereby, from setting up any title to the slave; and that the same estoppel would apply to the administrator cle bonis non; and that if the sale were invalid, for fraud, &c., the remedy belonged to the creditors and distributees of said intestate. The verdict was for the defendant, and the plaintiff has appealed in error to this court.
The administrator de bonis non is entitled to all the goods and personal estate of the intestate, which remain in specie, and were not administered by the first administrator; such as personal chattels in possession, or choses in action. He represents the legal title to the unadministered assets, precisely as the first administrator represented it. This principle applies in all cases, where the title to the assets has not been changed by the former administrator.
But if the former administrator has aliened or disposed of the assets as he may in general do, even by private sale, or has otherwise wasted them, in such case the title to the assets having been changed, they do not, in the view of a court of law, go to the administrator de bonis non. Certainly if it should appear, that the sale was by a fraudulent collusion, between the oi’iginal administrator and his vendee, a court of equity would consider the assets, as remaining unadminister-ed, and would order them to be restored, with the legal title, to the administrator de bonis non. Will, on Ex. 783 and 800. Cabbage vs. Boatwright, 1 Russ. Chan. Cas. 549.
But although the administrator has, in general, an unlimited power to alien and dispose of the assets of his intestate, being responsible for the abuse of it-; yet he has no such power over assets of the kind in question. The act of 1827, ch. 61, expressly prohibits the administrator .or executor to sell the slaves of the estate he represents, without a proper order *453 of court for that purpose, and his pretended sale without such order and permission, is declared to be utterly void.
If an administrator make sale of a slave of his intestate without the order and permission of court, the sale being a mere nullity, no title passes to the vendee; and it follows as a necessary consequence, that such slave is to be considered as assets, remaining in specie and unadministered, and will therefore go to the administrator de bonis non, as the only person that does or can represent the legal title.
The title of the administrator de bonis non, like that of the former administrator, must necessarily relate back to the time of the death of the intestate, as to all the assets that remain in specie, and unadministered; and he may therefore recover for any injury done to those assets, before the date of his appointment. This is a well settled principle, applicable to administrators ; and it applies, as well, to administrators de bonis non. It is to be observed, that the administrator de bonis non does not represent the former administrator, but he represents and deiives all his rights from the intestate, and between them there is properly a privity in estate. As the administrator de bonis non, is bound by the lawful acts of the former administrator, representing- the same person, there is in some respects, a privity between them, but it is not true as a general proposition. 1 Will, on Ex., 788. Grant vs. Chamberlin, 4 Mass. R. 612.
Now, to apply these principles to the present case ; the executions not being against the intestate, but other persons, the sale under them was merely void, and communicated no title to the purchaser. The act of Finley, the former administrator, concurring in the sale, could not aid the title, because, as we have seen, he had no power in pais, or even by deed, to dispose of the slaves of his intestate, without an order of court for that purpose.
The title to the slave being unchanged and unaffected by *454 that illegal act, it follows that the administrator de bonis non is entitled to the slave, or waiving his right to recover the slave in specie, is entitled to recover for the illegal and wrongful conversion of him.
We do not consider that he is estopped by the act in pais of the former administrator; it was not an act done in the performance of his duty as administrator, but was illegal and unauthorized; we have seen that it was wholly inoperative in itself, and produced no change in the title to the property, either legal or equitable.
Now, shall the administrator de bonis non be estopped by the act of the former administrator, when both the legal and equitable title to the property remain unaffected by that act? In view of the principles before stated, and the relation that exists between them, we do not think, that the administrator de bonis non is to be held as precluded or bound by the illegal acts of the former administrator. This would be carrying the doctrine of privity, as between them, to a much greater extent than we deem it applicable: the privity is more properly speaking, not between them, but between the intestate and each of them.
In the case of Herron vs. Marshall, 5 Hump. R. 444, the doctrine of estoppel was held to apply upon strictly legal and technical grounds; but its application was personal to the administrator himself, who did the act constituting the matter of estoppel.
We think that, upon principle, it ought to be so limited.
Let the judgment be reversed, and the cause remanded.